**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                                   **Case No.:   8:17-CR-251-T-24MAP**

**CARLOS PEREZ**

_____/

**SENTENCING MEMORANDUM**

COMES NOW, the Defendant, CARLOS PEREZ, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2, 2D1.1, and 18 U.S.C. §3553(a), and hereby files this Sentencing Memorandum in support of his previously-lodged minor role and "captain" objections and in further support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing, as enumerated in 18 U.S.C. §3553(a)(2).   As grounds in support thereof, Mr. Perez shows as follows:

I.       **History**

Mr. Perez is 52 years old, a native of Venezuela, who has always lived in his childhood home.[1] He has always been a fisherman and a merchant mariner, but has also done periodic construction work to make ends meet, like his brothers and grandfather. Mr. Perez was an only child who never knew his biological father, but he was raised along with nine maternal half-siblings by his mother and grandfather. There was a great deal of love and affection in his childhood household, and his grandfather provided unbound affection for all ten of his grandchildren. The struggle for daily survival took other tolls on the family. School was considered

_____

[1] Pre-Sentence Investigation Report, <u>United States v. Carlos Perez</u>, Docket No. 8:17-cr-251-T-24MAP, Part C, ¶35-40.

to be a privilege for most families, and there was never enough money from everyone to go to school. Mr. Perez made it through the 4th grade before he left to join his grandfather's profession as a fisherman.[2] Most of the men tried to make a living as fishermen, which proved to be a life-threatening occupation thanks to frequent pirating.

Mr. Perez has been married for fourteen years to his wife Ana Medena, and they have three children, Cruz, Leo, and Manuel, ranging from 11-2 years old. Their family home is in the same residence with his mother and seven of his siblings, with a total of two bedrooms and one bathroom. Despite the cramped conditions, their family unit is happy, loving, and they take care of each other.[3] Mr. Perez is extremely proud of his relationship with his three children who rely on him for everything, emotionally and financially. He has strived to be a hands-on, intimate father to his children because his own father was never there for him. When he climbed into the fishing boat that took him into the middle of the Pacific Ocean and this criminal case, he had dreams of giving his children better lives than his had been. Mr. Perez never saw his family again.[4]

Mr. Perez and his two co-defendants were discovered in a boat carrying 806 kilograms of cocaine under tarps, that was not moving by the U.S. Coast Guard on May 11, 2017, in the Pacific Ocean several hundred miles from his home.[5] Mr. Perez and the co-defendents were indicted on May 18, 2017, in the Middle District of Florida, Tampa Divison.[6] On July 26, 2017, he entered a plea of guilty to one count of conspiracy to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 21 U.S.C.

---

2 Id., Part C, ¶46.
3 See Family Photographs and Letters
4 Id., Part C, ¶35-50, Client and family interviews, 7/2017, Report of Investigation, Post Arrest Interview, Client interview at Pinellas County Jail, 7/13/2017.
5 Id., Part A, ¶10-12.
6 Id., Part A, ¶1.

§960(b)(1)(B)(ii), 46 U.S.C. §§ 70503(a) and 70506(a) and (b).[7]

## I.      Guideline calculations and challenges.

Mr. Perez's Presentence Investigation Report (PSR) lists his base offense level as a 38, pursuant to U.S.S.G. §2D1.1(c)(1), for an offense involving 450 or more kilograms of cocaine. The PSR added 2 levels for an alleged role of "captain" pursuant to U.S.S.G. § 2D1.1(b)(3)(C), subtracted 2 levels pursuant to U.S.S.G. §2D1.1(b)(17) and §5C1.2 (safety-valve reduction) for providing truthful information regarding his involvement in the offense to the government, and also subtracted 3 levels for acceptance of responsibility and a timely plea pursuant to U.S.S.G. § 3E1.1(a) and (b). The PSR thus found his total offense level to be a 35.[8] Mr. Perez is undoubtedly in Criminal History Category I, with no prior criminal history.[9]  The PSR thus estimates his guideline range to be 168-210 months imprisonment.[10] Finally, the PSR also contains a statutory provision of a minimum term of imprisonment of ten years, which will no longer apply if and when the government files an anticipated motion for a reduction to reflect the defendant's substantial assistance pursuant to U.S.S.G. §5K1.1. and/or 18 U.S.C. § 3553(e).[11]

Counsel lodged two objections to the PSR guideline range calculation, first to the alleged role of the defendant as a "captain" of the boat, and second to the absence of a reduction in the offense level acknowledging a minor role in the offense.[12] If this Court were to grant these objections, Mr. Perez's total offense level would thus be 27, pursuant to U.S.S.G. §2D1.1(c)(2), for an amount of cocaine more than 450 kilograms, minus 6 levels in recognition of Mr. Perez's minor role pursuant to U.S.S.G. §3B1.2 and 2D1.1(a)(5)(A) and (b), a further reduction of 2 levels

---

7 Id., Part A, ¶5-6.
8 Id., Part A, ¶18-28.
9 Id., Part B, ¶30-31.
10 Id., Part D, ¶50.
11 Id., Part A, ¶7.
12 Objections to Presentence Report, <u>United States v. Carlos Perez</u>, Docket No. 8:17-cr-251-T-24MAP, 10/11/2017.

mentioned above for "safety valve" adjustment, and a reduction of 3 levels to reflect Mr. Perez's timely guilty plea and acceptance of responsibility. At an offense level 27, Criminal History Category I, Mr. Perez's guideline range would thus be 70-87 months imprisonment. If this Honorable Court grants a 2-level departure based on a substantial assistance motion filed by the government, then the total offense level should become 25, which results in an advisory guideline range of 57-71 months imprisonment.

      **a.  Mr. Perez should not receive a 2-level adjustment for a role as "captain."**

Mr. Perez lodged an objection to receiving a 2-level increase for being a captain in the PSR.  The plain language of § 2D1.1(b)(3) shows that the Guideline seek to especially punish those who import drugs aboard vehicles that are uncommonly used or that require uncommon skill to use. The Guidelines call for a 2-level enhancement when drugs are imported by (A) private airplane, (B) submarine, or (C) one acting as a pilot, captain, co-pilot, navigator, flight officer, or other operation officer of a craft or vessel. *See* U.S.S.G. §2D1.1(b)(3). Notably, there is no comparable enhancement for importing drugs by other complex but more commonly-used and accessible vehicles, such as automobiles.

The commentary to the Guidelines explains why: special culpability adheres in one who pilots, captains, or navigates a plane or boat, because such a person uses special skill when they import drugs in that manner. *See* U.S.S.G. § 2D1.1 comment.n.23. The commentary's note on §2D1.1(b)(3), entitled "[i]nteraction with §3B1.3," states that §3B1.3 enhances sentences for "pilots, boat captains, . . . and others whose special skill, trade, profession, or position may be used to significantly facilitate the commission of a drug offense." *Id*.   Importantly, the commentary then states that "if an adjustment from [section 2D1.1] subsection (b)(3)(C)" -- that is, the pilot/captain enhancement -- "applies, do not apply §3B1.3 (Abuse of Position of Trust or Use of

Special Skill)." *Id*.

Reciprocally, the special skill adjustment states that it "may not be employed if . . . skill is included in the . . . specific offense characteristic." *See* U.S.S.G. § 3B1.3. The commentary defines "special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing." *See* U.S.S.G. § 3B1.3 comment.n.4. The commentary cites "pilots" as "examples." *Id*.

Read together with the pilot/captain enhancement -- as both Guidelines explicitly require -- the language of the special skill adjustment establishes that a defendant's use of special skills, of the type exemplified by pilots and captains, is required for a sentencing court to apply the pilot/captain enhancement. *See* U.S.S.G. §§ 2D1.1 comment. n.23 & 3B1.3 comment. n.4.

The Guidelines suggest a range of factors that a district court ought to consider in determining whether a person acted with special skill. *See* U.S.S.G. § 3B1.3 comment. n.4. These factors include whether a person received substantial education, training, or a license. *Id*. ('Special skill' refers to a skill . . . usually requiring substantial education, training, or licensing.").   Even if a person lacks such a background, the enhancement may still apply if he used "a skill not possessed by members of the general public." *Id*.

Here, the undisputed evidence not only failed to establish that Mr. Perez received substantial education, training, or a license to be a pilot, captain, or navigator, it affirmatively showed that he did not use any skill in this case that a member of the general public would lack. There is no evidence that Mr. Perez was observed acting as an officer of the "panga boat" – an open fishing dinghy powered by two outboard motors. There is no evidence that Mr. Perez was directing the actions of his co-defendants. The only available evidence is Mr. Perez's observed

5

driving of the vessel and alleged response to an Agent's question about who the "captain" was.[13] Mr. Perez's statement came within a story about observing that there was a man on the beach who appeared to be tied up who was refusing to get on the boat. Mr. Perez expressed fear at this observation, and was then told that he would have to drive the boat. The report of this interview states that he was told he was in charge. However, it also states that he knew that he would die if he did not cooperate. Mr. Perez's interaction with the traffickers and his fear of being killed was repeated in later interviews. Outside of this observation of the driver and the stated response to the agent, there is no other evidence that Mr. Perez was in fact, the captain of this vessel. There is also no evidence to suggest that Mr. Perez understood what the agent was asking about a "master" or "captain", or if he was simply intending to respond cooperatively. Furthermore, given the significant cultural and linguistic differences among these individuals and Mr. Perez's well-founded fear of death of the traffickers who hired him, there is significant possibility that Mr. Perez did not in any way intend any other affirmative response to the traffickers or the agents to mean that he was the actual captain and leader of this boat. It stands to reason that an individual who is shown that if he does not cooperate he will be killed, might not actually be in charge.

Furthermore, in order to decide whether the "captain" enhancement applies, the Court should look to the facts of each case and apply a "functional definition of the term "captain". *United States v. Cartwright*, 413 F.3d 1295 (11th Cir. 2005) at 1298. In the present case, the sole evidence that Mr. Perez was the captain of the vessel is the statement in the report authored by a U.S.C.G. member who states that he claimed to be the "master" of the boat. There is no evidence that Mr. Perez hired the crew, was operating the boat, gave directions or in any other way was responsible for navigating the vessel. Furthermore, the facts of the present case are distinguishable

---

13  See Government Discovery, Post-Arrest Interview, DISC-13-14.

from the facts in the cases where the court found that application of the 2-level increase for being a captain was appropriate. For example, in *Rendon*, the evidence established that the defendant identified himself as the captain of a go-fast boat, navigated the go-fast boat, and recruited and directed others on the go-fast boat. *See United States v. Rendon*, 354 F.3d 1320 (11th Cir. 2003) at 1323, 1329. Similarly, in *Cartwright,* the defendant used a compass and instructions to navigate a go-fast boat. *See Cartwright*, 413 F.3d at 1296-97, 1299.   In *Ramirez,* the defendant possessed documentation identifying him as the captain of a go-fast boat, admitted that he was the captain, knew the destination for delivery of the boat's load of cocaine, and oversaw and gave orders to his co-defendants aboard the boat. *See United States v. Ramirez*, 426 F.3d 1344 (11th Cir. 2005) at 1355. In *Bautista-Montelongo*, the defendant admitted that he was hired specifically to "drive" the boat, and he was the sole driver and occupant of the boat when arrested. *See United States v. Bautista-Montelongo*, 618 F.3d 464 (5th Cir. 2010) at 465-66. In *Guerrero*, the defendant admitted that he "was hired as the helmsman" of a forty-foot yacht and "was an experienced seaman who usually worked on merchant ships." *See United States v. Guerrero*, 114 F.3d 332 (1st Cir. 1997) at 335, 337, 346. And, in *Senn*, the defendant told a co-defendant "that he would 'captain the trip,' . . . listed himself as the captain on Customs documents, and . . . directed the operation of the vessel." *See United States v. Senn*, 129 F.3d 886 (7th Cir. 1997) at 897. In addition, the defendant in had arranged for the boat's purchase, recruited a mechanic to repair it, and hired individuals to serve as its crew. *See Id*. at 889.

Additionally, the pilot/captain enhancement was created by congressional directive as part of sweeping drug enforcement legislation. *See* U.S.S.G. app. C, amend. 134 (1989) (Reason for Amendment) ("The purpose of this amendment is to implement the directive to the Commission in Section 6453 of the Anti-Drug Abuse Act of 1988."). The mandate was "intended to express the

desire of Congress to require the imposition of significantly higher penalties for persons who would use aircraft to import drugs or who act as critical members of drug importation operations." Section Analysis of Judiciary Committee Issues in H.R. 5210, 134 Cong. Rec. S. 17360 (Nov. 10, 1988) (statement of Speaker Biden).  Importantly, in directing the Commission to create the pilot/captain enhancement, Congress stated that the mandate would be "subject to the adjustments set forth in Chapter[] Three . . . ." 134 Cong. Rec. S. 17360. But, when the Commission complied with the congressional directive, it explicitly added that the Chapter Three special skill adjustment should not apply if the pilot/captain enhancement applies. *See* U.S.S.G. §2D1.1 comment. n.23. This history indicates that the Commission sought to avert any double-counting that the congressionally-mandated enhancement might have caused by expressly exempting cumulative imposition of the special skill adjustment.

Because Mr. Perez did not act with special skills or authority aboard the dinghy, the 2-level increase for being a captain of the boat should not apply.

**b.      Mr. Perez deserves an adjustment for his minor role.**

U.S.S.G. §3B1.2 provides for either a 4-level minimal role, 2-level minor role, or a 3-level intermediate role reduction. Specifically, §3B1.2(b) provides for a 2-level reduction if "the defendant was a minor participant in any criminal activity." The determination whether a defendant should receive a role reduction is a fact-based determination and is "heavily dependent on the facts of the particular case." *See* U.S.S.G. §3B1.2 App. N. 3(C). The Application notes provide guidance on distinguishing between a "minimal" and a "minor" participant. Specifically the application notes provide that a minimal participant is:

> [A person] who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge and

understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. It is intended that this downward adjustment for minimal participant will be used infrequently.

U.S.S.G. § 3B1.2, App. N. 4.

In contrast to a minimal participant, the Application Notes provide that a minor participant "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal."   Additionally, in contrast to the Commission's observation that a "minimal participant" reduction should be used infrequently by a sentencing court, there is no such prohibitive language within the description of a "minor" participant.   In fact, the Sentencing Commission has recently as part of the November 1, 2015, amendments to the guidelines expressed the opinion that sentencing courts are not granting mitigating role reductions for low-level offenders as much as the Commission had intended. *See* U.S.S.G. Appendix C, amend. 794.

In the present case, Mr. Perez arguably does not qualify for a minimal role reduction but he does qualify for a minor role reduction because he is "less culpable" than most other participants in the conspiracy to which he has pleaded guilty. He is less culpable than the individual who recruited him to participate in the smuggling operation, the individuals organizing the transportation of the cocaine, the buyers of the cocaine, the sellers of the cocaine, and the drug dealers who will ultimately distribute the cocaine.

In drug cases such as the present case, a role reduction is directly tied to the base offense level determination under U.S.S.G. §2D1.1. Specifically, §2D1.1(a)(5) provides that "if the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level . . . is (i) 32, decrease by 2 levels; (ii) level 34 or level 36, decrease by 3 levels; or (iii) level 38, decrease by 4 levels."   Additionally, the Application Notes to §3B1.2 provide that in drug cases where a defendant's base offense level is determined pursuant to §2D1.1(a)(5), the Court shall

9

additionally reduce that base offense level based on the defendant's mitigating role, whether that be a 4-level minimal participant, a 2-level minor participant, or a 3-level intermediate participant reduction. *See* U.S.S.G. §3B1.2 App. N. 6.

Over the past 14 years, the Sentencing Commission, out of concern that sentencing courts around the country have been under-applying or misapplying the mitigating role reduction, has attempted to provide sentencing courts added guidance on when it is appropriate to apply the §3B1.2 mitigating role and corresponding §2D1.1(a)(5) base offense reductions. Specifically, on November 1, 2002, Congress and the Sentencing Commission drastically amended U.S.S.G. §2D1.1 to reduce the sentences for low-level drug conspiracy participants by providing that the offense level specified in the Drug Quantity Table should be applied "except that if the defendant receives an adjustment under §3B1.2 (Mitigating Role), the base offense level under [2D1.1] shall not be more than level 30." U.S.S.G. §2D1.1(a)(3), U.S.S.G. Appx. C, Amend. 640.   As such, if a drug offender qualifies for either a minimal, minor, or intermediate role reduction, then the highest possible base offense level that the defendant may receive is a level 30. *Id*. The legislative history of this amendment provides that:

> This amendment responds to concerns that the guidelines pertaining to drug offenses do not satisfactorily reflect the culpability of certain offenders . . .
>
> [ ] The amendment modifies §2D1.1(a)(3) to provide a maximum base offense level of 30 if the defendant receives an adjustment under § 3B1.2 (Mitigating Role). *The maximum base offense level somewhat limits the sentencing impact of drug quantity for offenders who perform relatively low level trafficking functions, have little authority in the drug trafficking organization, and have a lower degree of individual culpability (e.g., "mules" or "couriers") whose most serious trafficking function is transporting drugs and who qualify for a mitigating role adjustment).*
>
> This part of the amendment responds to concerns that base offense levels derived from the Drug Quantity Table in §2D1.1 overstates the culpability of certain drug offenders who meet the criteria for a mitigating role adjustment under §3B1.2. The Commission determined that, ordinarily, a maximum base offense level of 30 adequately reflects the culpability of a defendant who qualifies for a mitigating role

adjustment.

U.S.S.G. Appx. C, Amend 640 (*emphasis added*).

As noted by the Sentencing Commission as part of the November 1, 2015, amendment to the mitigating role provision, after conducting a recent in-depth national study, the Sentencing Commission found that sentencing courts were still not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended. In drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who perform similar low-level functions (and the rate of application vary widely from district to district). For example, application of mitigating role varies along the southwest boarder, with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another. Moreover, among drug defendants who do receive mitigating role, there are differences from district to district in application rates of 2-, 3-, and 4-level adjustments.

*See* U.S.S.G. App. C, Amend. 794.

Based on this study's findings, the Commission's clarifying November 1, 2015, amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.*   It is the intent of the Commission by way of the Amendment to address the Commission's observation "that courts often [incorrectly in the eyes of the Commission] deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id.*

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id.* Specifically,

the amendment "addresses a circuit split and other case law that may be discouraging courts from applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so the amount of the adjustment." *Id.* Specifically, the Commission's November 1, 2015, factors direct a sentencing court to consider:

> (i)      the degree to which the defendant understood the scope and structure of the criminal activity;

> (ii)     the degree to which the defendant participated in planning or organizing the criminal activity;

> (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

> (iv)    the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

> (v)     the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. §3B1.2, App. N. 3(C).

Additionally, and of great significance to the present case, the amendment further provides that:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative.  Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

In the present case, the Commissions' clarifying amendment makes it abundantly clear that Mr. Perez should receive a 2-level minor role reduction and, by consequence, a 4-level reduction in his base offense level, pursuant to §2D1.1(a)(5)(iii).   Factually, Mr. Perez was hired by a Colombian/Ecuadorian drug trafficking organization to act as a courier by transporting cocaine from Ecuador to Guatemala/Panama while on-board a go-fast vessel.   He was to receive financial compensation for transporting the drugs and he had no ownership or proprietary interest in the drugs.   To put it simply, he was being paid to perform the limited task of acting as a "deckhand" during the transportation of the drugs from one country to another by way of the open sea.

Mr. Perez's role in the drug trafficking organization was not that of the seller, buyer, manufacturer, organizer of the transportation operation; he was simply being paid along with other crewmembers to perform the task of assisting in the transporting of a vessel containing cocaine from the sellers to the buyers of the cocaine. He is, in fact, the exact type of low-level participant who should be receiving a mitigating role reduction (*i.e*., drug courier) that the Sentencing Commission has identified in the 2002 amendment to U.S.S.G. §2D1.1, as well as in the November 2015, amendment to U.S.S.G. §3B1.2. It is clear from the legislative history of these two amendments that low-level transporters of drugs who are working for a larger drug trafficking organization are the specific type of offender the Commission has always intended should receive a minor role reduction and corresponding §2D1.1(a)(5) adjustment in their base offense level.

The fact that a large drug-trafficking organization is involved in the distribution of cocaine in amounts larger than the amount of cocaine Mr. Perez and his indicted co-defendants were apprehended with does not in any way preclude him from being eligible for a mitigating role reduction. As noted in the Commission's clarifying November 2015, amendment:

13

A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under the guidelines. *For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs* and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stores may receive an adjustment under the guidelines."

USSG §3B1.2, App. 3(A) (emphasis added).

Additionally, in analyzing the clarifying, non-exhaustive list of factors in the proposed amendment, it is clear that each and every factor would support Mr. Perez receiving a mitigating role reduction. As a simple courier or transporter of drugs, he:

(i)     Had little or no degree of understanding of the scope and structure of the overarching criminal activity; he was simply instructed to assist in the transportation of the cocaine from point A to point B.

(ii)    Had no role in the planning or organization of the criminal activity, including no role in the planning or organization of the transportation operation itself.

(iii)   Had no decision-making authority, nor did he have any influence regarding the exercise of decision-making authority. He simply followed the directions of others.

(iv)    The nature and extent of his activity and participation was limited to his assistance with the transportation of packages of cocaine from Columbia/Ecuador to Mexico; he had little or no responsibility or discretion in performing these transportation functions, and at all times during the transportation took direct orders from someone else;

(v)     The only benefit he was to receive for his transportation function of a single load of cocaine was especially minimal in light of the street value of the drugs he was transporting.

(vi)    Had no proprietary interest in the criminal activity and was simply being paid to perform certain tasks (*i.e.*, assisting in the transportation of drugs).

Therefore, based upon the newly created factors this Court is directed by the Sentencing Commission to specifically consider in determining when to apply a mitigating role reduction pursuant to U.S.S.G. §3B1.2, this Court must find that Mr. Perez qualifies for a 2-level minor role

14

reduction and must adjust his base and total offense levels accordingly.

    i.    **The abrogation of the reasoning in Rodriguez de Varon and similar cases by the mitigating role amendment to the guidelines.**

        Contrary to the United States Probation Office's assertions in responding to minor role objections, the Eleventh Circuit opinion in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999), should no longer be used by this Court to preclude Mr. Perez from eligibility for a mitigating role reduction. In fact, it is clear from the legislative history of the November 1, 2015, amendment to the mitigating role provision that the Sentencing Commission has abrogated the reasoning in *Rodriguez De Varon*. *See* generally U.S.S.G. Appendix C, Amend. 794. As previously noted after conducting an in-depth national study, the Sentencing Commission enacted the November 1, 2015, version of U.S.S.G. §3B1.2 (Mitigating Role). This change in the guidelines was in response to the Sentencing Commission's findings that sentencing courts were not applying the mitigating role reduction as often as was intended by the Commission. Specifically, the Sentencing Commission noted:

> The Commission conducted a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony. Overall, the study found that mitigating role is applied inconsistently and more sparingly than the Commission intended.

*Id.*

Based on this study's findings, the Commission's clarifying amendment to §3B1.2 was created in hopes of fostering a greater application of the mitigating role reduction for defendants, such as Mr. Perez, who perform relatively low-level functions, such as "mules" and "couriers," for large drug trafficking organizations. *Id.* As noted in the legislative history of the amendment, it was the specific intent of the Commission by way of the Amendment to address the Commission's

observation "that courts often deny mitigating role to otherwise eligible defendants if the defendant was considered 'integral' to the successful commission of the offense." *Id.*   The Eleventh Circuit opinion in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999), although not specifically named by the Sentencing Commission, is one such case that has justified the denial of a mitigating role reduction where the evidence supports a finding that the defendant was "integral" or played an "important" or "essential" role in the transportation of the drugs he or she transported. *Rodriguez De Varon*, at 943 ("Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs" justifying a denial of a mitigating role reduction).[14]

The rationale in the *Rodriguez De Varon* opinion, which has now been viewed unfavorably by the Sentencing Commission, has been used exclusively in this District to deny minor role reductions for transporters of large quantities of cocaine while on board a vessel subject to the jurisdiction of the United States.   Despite the clear intent of the Sentencing Commission, the Government and the Probation Department are continuing to rely upon this now-flawed opinion from the Eleventh Circuit to justify a denial of a role reduction in the present case. For this Court to continue to follow the flawed reasoning in the *Rodriguez De Varon* opinion would be contrary to the intent of the Sentencing Commission and Congress and would defeat the clear intent of the Sentencing Commission to increase the rate of mitigating role reductions for otherwise-qualified

---

[14]"Couriers, like *De Varon*, who are convicted solely of the crime of importing drugs and whose base offense levels reflect only those drugs they personally brought into this country, are not eligible for a role reduction of any kind.   It will always be clear error for a district court to grant a courier a role reduction in such circumstances. *See United States v. Lampkins*, 47 F.3d 175, 181 (7th Cir. 1995)('It makes no sense to claim that one is a minor participant in one's own conduct'); *United States v. Burnett*, 66 F. 3d 137. 140 (7th Cir. 1995)('Where a courier is held accountable for only the amounts he carries, he plays a significant rather than a minor role in that offense').   This conclusion necessarily follows from the guidelines, from principles recognized in the Court's opinion in this case, and from common sense." 174 F.3d at 947 (Carnes, Concurring).

defendants.

In the eyes of the Sentencing Commission, the *Rodriguez De Varon* opinion has been inappropriately focusing on whether the courier or transporter of drugs was important or essential to the importation offense in determining whether to apply a mitigating role reduction. It is the Commission's clear intent that a sentencing court not focus on whether the task performed was "integral" or "essential," but, instead, to focus on the task the defendant performed in relationship to the larger conspiracy in which they were involved. This fact is clearly evidenced by the fact that the application notes now provide that "a defendant who does not have a proprietary interest in the criminal activity and who is simply paid to perform tasks should be considered for an adjustment under this guideline." *See* U.S.S.G. §2B1.2, App. N. 3.

In response to the Commission's concerns, the Sentencing Commission's amendment to the guidelines was specifically designed to address the flawed approach taken by *Rodriguez De Varon* and other courts. As noted in the legislative history of the mitigating role amendment:

> Next, the amendment addresses cases in which the defendant was 'integral' or 'indispensable' to the commission of the offense. Public comment suggested, and a review of case law confirmed, that in some cases a defendant may be denied a mitigating role adjustment solely because he or she was "integral" or "indispensable" to the commission of the offense. [Citations Omitted] [T]he Amendment revises the commentary to emphasize that the "the fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative" and that such a defendant may receive a mitigating role adjustment, if he or she is otherwise eligible.

U.S.S.G. Appendix C, Amend. 794.

In response to the "inconsistent" and "sparse" application of the mitigating role adjustment, the amendment to the guidelines was designed specifically to "provide additional guidance to sentencing courts in determining whether a mitigating role adjustment applies." *Id*. Specifically, the amendment "addresses a circuit split and other case law that may be discouraging courts from

applying the adjustment in otherwise appropriate circumstances." *Id.* To assist courts and to encourage them to apply the adjustment more frequently, the Commission has provided sentencing courts with "a non-exhaustive list of factors for the court to consider in determining whether an adjustment applies and, if so, the amount of the adjustment." *Id.* Specifically, as noted above, the Commission's newly-created factors direct a sentencing court to consider:

    (i)    the degree to which the defendant understood the scope and structure of the criminal activity;

    (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

    (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

    (iv)    the nature and the extent of the defendant's participation in the commission of the criminal activity, including acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

    (v)    the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G §3B1.2, App. N. 3(C).

As evidenced by these enumerated factors, the Sentencing Commission is directing a sentencing court to examine the defendant's degree of understanding and participation in the larger drug trafficking conspiracy and not whether they were "essential" or "integral" to the crime for which they were being held responsible. Additionally, and of great significance to the present case, the amendment further provides that:

For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.

The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

18

*Id.*

As such, it is clear from the legislative history of the clarifying amendment to U.S.S.G. §2B1.2 (Mitigating Role) that *Rodriguez De Varon* and similar cases have been abrogated by the Sentencing Commission and, by Congress who passed the amendment.   While the legislative history to the amendment does not specifically reference *Rodriguez De Varon*, it does specifically reference *United States v. Skinner*, 690 F.3d 772, 783-784 (6th Cir. 2012); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008); *United States v. Deans*, 590 F.3d 907, 910 (8th Cir. 2010); and *United States v. Carter,* 971 F.2d 597, 600 (10th Cir. 1992) - all of which rely upon the same flawed reasoning in *Rodriguez De Varon* that if a defendant plays an critical, integral, essential, important, or indispensable role in the criminal activity, they are ineligible for a mitigating role reduction. *See* U.S.S.G. Appendix C, Amend. 794. Clearly, this approach is no longer applicable and thus this Court should not look to the *Rodriguez De Varon* opinion but the amended guideline and the factors enumerated by the Sentencing Commission for this Court's consideration.

Of further significance to the present case, in listing the factors this Court should consider when determining the applicability of a mitigating role reduction, the Commission did not reference the amount of drugs involved in the criminal activity. In contrast, in *Rodriguez De Varon*, the Eleventh Circuit relied heavily on the amount of drugs found in the courier's possession. As noted by the Court in *Rodriguez De Varon*, "because the amount of drugs in a courier's possession –whether very large or very small – may be the best indicator of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that the amount of the drugs may be dispositive in and of itself in the extreme case." *Id*. at 943. Numerous courts in this District, following the guidance of *Rodriguez De Varon*, have previously denied a minor role

reduction for defendants similarly-situated as Mr. Perez, based on the large quantity of drugs found on the their vessel or in the water after the drugs had been thrown overboard by the couriers.

In 1999, the Eleventh Circuit found support for the "quantity-of-drugs" factor by pointing to an example found within an Application Note to the then-1999 version of the §2B1.2 guideline. *Id*. However, subsequent to the issuance of the *Rodriguez De Varon* opinion, the illustrative example related to the quantity of drugs in the application note was deleted from the guidelines by the Sentencing Commission in the November 1, 2001, version of the guidelines. *See* Nov. 1, 2001 §2B1.2 guideline, App. Notes generally. The removal of the illustrative "quantity of the drugs" example clearly evidences the Commission's intent that the amount of drugs involved should not be a determinative factor. In fact, this intent is further exemplified by the present version of the Guidelines, which lists five factors for a court's consideration, none of which focuses on the amount of drugs transported and certainly none of which suggests that in an extreme case the amount of drug could be determinative. As such, contrary to the assertions of the United States Probation Office, in light of the newly amended mitigating role provisions in the guidelines the *Rodriguez De Varon* opinion should no longer be relied upon by this Court in determining the eligibility for a mitigating role reduction. Instead, this Court should turn to the factors enumerated in the November 1, 2015, guidelines, all of which support Mr. Perez receiving a minor role reduction.

Therefore, Mr. Perez should receive a 2-level minor role reduction and a corresponding 4-level U.S.S.G. §2D1.1(a)(5)(iii) adjustment in his base offense level.

**II.     Mr. Perez's History and Characteristics of his Offense Suggest That a Sentence of 87 Months Imprisonment Would be "Sufficient but No Greater Than Necessary" to Comply With the Purposes of Sentencing in 18 U.S.C. §3553(a) of Just Punishment, Public Protection, and Deterrence**.

Although the guidelines are "the starting point and the initial benchmark" for determining

the appropriate sentence, "[t]he Guidelines are not the only consideration" and the sentencing court must consider all of the 18 U.S.C. §3553(a) factors in crafting a sentence. <u>Gall v. United States</u>, 552 U.S. 38, 49-50 (2007).   When considering the §3553(a) factors, the sentencing judge may give more weight to some factors than others. <u>See</u> <u>United States v. Pauley,</u> 511 F.3d 468, 476 (4th Cir. 2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 570 (2007).

A sentence within the range of 70-87 months is appropriate and just according to the factors that must be examined under 18 U.S.C. § 3553(a). These efforts are significant and should be recognized under 18 U.S.C. §3553(a). Furthermore, in light of the mitigating history and characteristics of Mr. Perez as well as the facts and circumstances surrounding the non-violent nature of his offense, a sentence of 87 months, to be followed by a 5-year term of supervised release, will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. § 3553(a).

a.   **A sentence of 87 months adequately reflects the seriousness of the offense.**

The quantity of cocaine in this case is undoubtedly great, and a serious prison sentence is required to answer for this crime and send Mr. Perez and others a message of deterrence that is lasting and sobering. However, those goals are accomplished with a sentence of approximately 87 months. At 52, Mr. Perez has spent his entire life in rural Venezuela providing for his family as a fisherman and construction worker. For a man like this, his arrest and incarceration has already been the most devastating event of his life. A sentence of 87 months imprisonment is even more devastating for him than for someone in the United States with the same sentence. Mr. Perez is cut

off from everything he knows, in a strange place where he understands no one and he knows no one. His isolation during incarceration will be more severe than that of an American citizen serving a similar sentence. Because of this cultural isolation and his utter lack of any history of criminal behavior, a sentence of 87 months is just punishment for this individual.

      b.     **A sentence of 87 months will protect the public.**

Mr. Perez does not require a longer sentence than 87 months to protect the public from any further crimes by him. There is ample evidence in this case that Mr. Perez will **never again** return to this country after he completes his sentence and deportation. Furthermore, there is ample evidence that he will never again attempt this crime or any drug-related crime. There are no factors here that suggest a risk of recidivism. Mr. Perez's entire world and system of support exists in rural Venezuela. His only motivation for attempting this crime was to change and improve the lives of his children. Outside these events, Mr. Perez had no desire, nor did he ever attempt to even leave his home state. He does not exhibit any characteristics of a man who is lured toward criminal activity even at home. Furthermore, the hallmarks of his life outside this crime suggest that his real life, the one before this offense, will again be his permanent station.

The United States Office of Probation and Pretrial Services (OPPS) developed a risk assessment instrument for assessing an individual's risk and needs when placed on supervision after conviction. The Federal Post Conviction Risk Assessment (PCRA) is a 55 item quantifiable instrument that measures a person's risk of recidivism across seven domains: criminal history, including arrests; education and employment; alcohol and drug problems; social networks; cognitions (antisocial attitudes); other (housing, finance, recreation; and responsivity factors (personal, cultural, and societal barriers to change). A risk score is determined by adding up the points for scored items, which then correspond to a risk of recidivism based on a past analysis of

OPPS data.

Similarly, the Federal Judicial Center developed the Risk Prediction Index (RPI) after several years of study and testing in eleven districts, now used by U.S. Probation officers during their assessments of newly released offenders to "estimate the likelihood that an offender will be arrested or have supervision revoked during his or her term of supervision."  U.S. Probation, *The Supervision of Federal Offenders, Monograph 109,*111-10. (March 2007 Update). The RPI measures seven variables: (1) the offender's age; (2) the number of arrests before the instant offense; (3) employment status (4) history of illegal drug or alcohol abuse; (5) prior history of absconding from supervision; (6) whether the offender has a college degree; and (7) whether the offender was living with a spouse and/or children at the start of supervision. These variables are assigned value, which are totaled for a score which can then be compared to other offenders for risk of recidivism.

When Mr. Perez's circumstances are measured according to either index, the PCRA, or the RPI, he would most certainly score in an extremely low risk category for recidivism. From the PCRA perspective, he has no criminal history, long term stable employment, some education, no alcohol or drug problems, a strong and healthy social network, no evidence of antisocial attitude, a stable childhood home and family. From the RPI perspective, again, Mr. Perez is not a young adult (52, low risk), has no prior arrests, steady employment, no drug or alcohol abuse, no history of absconding, and a stable family (wife of fourteen years and three children).

Mr. Perez statistically bears the hallmarks of someone with an extremely low risk of reoffending because of his age, lifetime employment, marital status, and first offender status. Increased age bears a strong correlation with lower recidivism.  According to Sentencing Commission data, "recidivism rates decline relatively consistently as age increases," from 35.5%

under age 21 to 9.5 % over age 50. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 and Exhibit 9 (May 2004). The Commission's studies demonstrate that stable employment in the year prior to arrest is associated with a lower risk of recidivism. *See Measuring Recidivism*, supra at 12 & Ex. 10.   (Mr. Perez has worked consistently and supported his family as a fisherman since his teens) Commission studies show that recidivism rates are lower for defendants who are married. *See Measuring Recidivism,* supra at 11 & Exhibit 10.   Finally and most critically, Sentencing Commission studies show that minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism.   *See USSC, A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 15 (2005).

There is no evidence that Mr. Perez poses any sort of danger to the public, and a wealth of evidence to suggest that he will never again return to the justice system. Mr. Perez has spent his life raising his family in his ancestral home. When he is not working, he gives his time to his children and parents. Increased imprisonment in this case is not necessary to establish deterrence. Evidence of the deterrent value of imprisonment is ambiguous at best, and not a sound basis upon which to sentence. *See* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules; Finding and Using the Philosophy of the Federal Sentencing Guidelines,* 40 Am.Crim. L.Rev. 19, 61-62 (2003). Moreover, the punishment Mr. Perez has sustained already is so devastating to him because of his crime that this Court does not need to consider greater incarceration to accomplish adequate deterrence.

Mr. Perez demonstrates stability and maturity in every domain examined by the PCRA and if evaluated, would score as an extremely low risk for recidivism. Finally, Mr. Perez's arrest has

caused a great deal of suffering to his family in Venezuela, and a sentence greater than 87 months will prove traumatic to them, as their economic situation is already precarious and they rely on him for their survival. The absence of his financial and paternal support for his three children will do real damage to their ability to stay in school for the next several years and improve their lives. His absence and extended incarceration is destabilizing to everyone in his life in Venezuela.[15]

## III.    Conclusion

A sentence of 87 months imprisonment would provide "just punishment" for the offense, would "reflect the seriousness of the offense," and would "promote respect for the law." Additionally, such a sentence will reasonably reflect Mr. Perez's mitigating role in this case, his cooperative efforts, his history and characteristics and will also more than adequately punish him for his non-violent, although very serious crime.   At the same time, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Perez as an individual and appropriately taken into consideration his unique human failings which mitigate his crime and his punishment. Even in the absence of the requested departures, this sentence is appropriate when considered according to the factors of 18 U.S.C. § 3553(a).

**WHEREFORE**, the Defendant, **Carlos Perez**, respectfully moves this Honorable Court to sustain his "captain" and minor role objections, to grant any  Government's "substantial assistance" motion, and based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 87 months of incarceration to be followed by a 5-year term of supervised release.

DATED this 30th day of October, 2017.

Respectfully submitted,

---

14 See attached family photographs.

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Tamara E. Theiss*
Tamara E. Theiss
Assistant Federal Defender
Georgia Bar No. 703979
400 North Tampa Street
Suite 2700
Tampa, Florida 33602
Telephone:(813) 228-2715
Facsimile:  (813) 228-2562
Email:     Tamara_Theiss@fd.org

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 30th day of October, 2017, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Diego Novaes

*/s/ Tamara E. Theiss*
Tamara E. Theiss
Assistant Federal Defender